Gaetano Cirillo *vs.* Josephine Cirillo *et al.*

JULY 7, 1950.

Present: Flynn, C.J., Capotosto, Baker, Condon and O'Connell, JJ.

Capotosto, J. This is a bill in equity to impress a trust on certain real estate in the town of Bristol in this state. The bill also contains a prayer for incidental relief. Following a hearing in the superior court on bill, answer and proof the trial justice denied and dismissed the bill. The cause is before us on complainant's appeal from a final decree in accordance with that decision.

A brief summary of the evidence is sufficient. The com-

plainant Gaetano Cirillo, hereinafter called Gaetano, is the husband of the respondent Agata Cirillo referred to as Agata, and the father of the other respondent Josephine Cirillo, called Josephine. Gaetano and Agata bought the property, known as 411 High street, in 1936, the deed thereto running to them as joint tenants. The Cirillos still occupy those premises as their home.

For some years Gaetano ran a small grocery store. In 1941, due to the depression and other contributing causes, he and Agata became fearful that they might lose their home to his creditors. Adopting the advice of a third party two deeds were executed, both dated February 17, 1941. One deed ran from Gaetano and Agata to Josephine, which was duly recorded, and the other deed ran from Josephine to her mother Agata, who never recorded it. The present controversy arose when, after the claims of all of Gaetano's creditors had been paid or otherwise adjusted he, believing that the deed from Josephine ran to himself and Agata as joint tenants, asked Agata to record that deed. When she refused to do so unless he gave her $1000, Gaetano instituted these proceedings.

A careful examination of all the evidence leads us to the following conclusions. First, while the object of both Gaetano and Agata in transferring title to Josephine plainly was to hinder and delay creditors, no creditor is a party to or has an interest in this cause. Secondly, no monetary consideration was involved in the transaction. Josephine, who did not testify, makes no claim to any rights in the property. It is plain that she was selected and consented to be merely the conduit by which the plan that had been suggested to protect the property from creditors could be conveniently carried out. And thirdly, from the date of the unrecorded deed from Josephine to Agata and almost up to the time of these proceedings both Gaetano and Agata believed that such deed ran to both of them as joint tenants, as in the original purchase deed. Upon being asked what the deed from Josephine to her "purported to be,"

Agata answered: "It was a protection for me. Q. And did you also think it was a protection for your husband? A. I thought his name was here also." After having testified that she was surprised to learn that the deed conveyed the property to her alone, the following question and answer appear: "Q. That was something that you didn't expect? A. No, I did not expect."

In his rescript the trial justice stated that when Gaetano "made the conveyance to his wife *he* received back from her a paper which he claims he thought to be a reconveyance of his interest * * *. *Later* Josephine conveyed the property to Agata for what to the Court *seems* like a valuable consideration rendered in good faith for the transfer." (italics ours) Such understanding of the facts shows a clear misconception of the evidence of record as hereinbefore outlined. There was no conveyance from Gaetano to his wife; he did not receive any "paper" back from her; and Josephine did not "later" convey the property to Agata as the two deeds in question were executed and delivered at the one and only meeting of the parties for that purpose. Furthermore, we are at a loss to understand what the trial justice meant when he said that Josephine conveyed the property to Agata for "what to the Court seems like a valuable consideration." Unless we construe Josephine's willingness to assist her father and mother in carrying out their plan as a valuable consideration, which in the absence of any such claim is unreasonable in the circumstances, there is no evidence of consideration in the record before us.

The rescript of the trial justice ends as follows: "It is obvious that the conveyance from the plaintiff to his wife was for the purpose of hindering, if not of defrauding, his creditors. The Court cannot compel Josephine to carry out her part of the bargain." Such reference to the facts reflects some of the same infirmities just above mentioned. The complainant made no conveyance to his wife, and Josephine had conveyed the property to her mother long

226

before the hearing in the superior court. At that time, through error in drawing the deed from Josephine, the entire title to the property was in Agata, complainant's wife.

In addition to a misconception of the evidence it is our opinion that the trial justice rested his decision on an erroneous view of the law. We emphasize at this point that no creditor is a party to or has any interest in the instant suit. It is settled that only a creditor can set up the claim that a conveyance was in fraud of creditors. In Hudson v. White, 17 R. I. 519, where no creditor was a party to the cause, this court, at page 528 of the opinion, finally dismissed the claim that the transfer of certain real estate was in fraud of creditors in the following language: "A conclusive answer, however, to the point which the respondents make is, that no one but a creditor can set up this defence." It therefore held that even though a transaction were intended to hinder or delay creditors but none was affected, the transaction, not being illegal in itself, was valid between the parties and binding as to everyone except he be a creditor. Hazard v. Coyle, 22 R. I. 435; Oldham v. Oldham, 58 R. I. 268, 277. See also Estes v. Howland, 15 R. I. 127. The facts of the instant cause plainly bring it within the scope of those decisions.

Respondents further contend that the complainant is not entitled to relief because he does not come into equity with clean hands. The facts in this cause do not warrant the application of that doctrine which, according to the great weight of authority, becomes operative only when a complainant must depend on his own improper conduct to establish his rights against the *other parties to the suit*. For situations similar or akin to the one under consideration see *Parker* v. *Parker*, 56 Iowa 111; *Cartledge* v. *McCoy*, 98 Ga. 560; *Powell* v. *Ivey*, 88 N. C. 256; *Moore* v. *Livingston*, 14 How. Pr. 1; *O'Gasapian* v. *Danielson*, 284 Mass. 27.

An important and basic fact that should not be overlooked in the instant cause is that Josephine, who in this

instance we will call the fraudulent grantee merely for convenience, divested herself of all interest in the property years before the commencement of these proceedings. Conceding that the transfer of the property to her in fraud of creditors was an act that should not have been done, that fact is of no controlling force in the circumstances as it is not an element in complainant's present claim against Agata. She is not a creditor nor does she represent anyone in that category. The complainant has done nothing in any way tending to defraud his wife of her just rights in the property, while she, merely because of error in drafting a deed which failed to carry out her original understanding with him, now refuses to carry out that understanding unless he pays her $1000.

In our judgment the complainant has established by clear and convincing evidence his right to be reinstated as an owner in joint tenancy with Agata of the property in question. To accomplish that end Agata Cirillo is found to hold such real estate as trustee for the use and benefit of complainant and herself as joint tenants; and she is hereby ordered to record immediately the deed of February 17, 1941 to her from Josephine Cirillo and thereupon to execute and record forthwith a deed of the premises running to herself and her husband Gaetano Cirillo as joint tenants.

The complainant's appeal is sustained, and the decree appealed from is reversed. The parties may present to this court a form of decree in accordance with this opinion to be entered in the superior court.

### On Motion for Reargument.

#### October 23, 1950.

Per Curiam. After our opinion was filed in this cause the respondents requested and received permission to file a motion for reargument. Such a motion was filed and in support thereof they argue that because of dissimilarity in the facts the principle stated in *Hudson* v. *White*, 17 R. I. 519, was unduly extended in the circumstances of the instant

cause; and further that the cases from other jurisdictions cited by us are in conflict with the *Hudson* case. We find no cause for reargument on either of those grounds.

The *Hudson* case clearly holds that if there be an intent to defraud a particular person or class of persons the sale or transfer of property would be voidable as to that person or class of persons; but as to all others such fraud would be without injury to them and could not be availed of by them as a defense. In other words, the principle of the *Hudson* case, which we also followed in *Oldham* v. *Oldham,* 58 R. I. 268, 277, is that the *defense* that a conveyance is in fraud of creditors is not open to one who is not a creditor directly or in a representative capacity. We made it clear in our opinion that when the instant proceedings were brought there were no creditors and that complainant's wife was not a creditor or the representative of a creditor. Yet she refused to carry out her part of an agreement, which was valid as between herself and her husband, and in effect set up as a *defense* for refusing to reconvey the property in accordance with such agreement the claim that the conveyance to her was in fraud of creditors. It is our judgment, in accordance with the principle adopted by this court in *Hudson* v. *White, supra,* that under the peculiar facts in this cause she is not entitled to the benefit of such defense.

The respondents' other claim, that the cases from other states cited in our opinion are not in accord therewith, is not new to us. In this respect they misinterpret the purpose of those citations which was to supply general information on a point as to which there is disagreement among the courts of the various jurisdictions. It was for that reason that we referred only generally and in a cautious manner to such cases rather than to cite them in direct support of our decision.

The respondents' motion is denied, and on October 30, 1950 the parties may present to this court a form of decree

in accordance with the opinion to be entered in the superior court.

*Joseph Mainelli,* for complainant.

*Vincent P. Marcaccio, Jr.,* for respondents.